## Incorporation of Scranton Sportswear Welfare Assn.

*Jerome E. Parker*, for applicants.
*J. Julius Levy*, for objectors.

HOBAN, J., September 5, 1946.—This case is before the court on application for incorporation of a non-profit corporation, and objections thereto on the ground that the proposed corporation is a company-dominated union and its establishment is an unfair labor practice and therefore injurious to the community.

Scranton Sportswear is a partnership engaged in the manufacture of women's and children's clothing in the City of Scranton. It employs some 125 people, mostly women. About the end of March 1946 the Amalgamated Clothing Workers of America, hereafter called

the Amalgamated, a National labor organization affiliated with the Congress of Industrial Organizations, hereafter called C. I. O., commenced a campaign to organize the employes of Scranton Sportswear by inducing them to join the Amalgamated. The organizer secured the signatures of a number of employes to cards evidencing their desire to join the Amalgamated and to have it designated as their sole bargaining agent for the purpose of collective bargaining as to wages and conditions of employment.

On April 7, 1946, a conference was had with the owners for the purpose of securing recognition of Amalgamated or a consent election; but the owners, professing not to care what union represented the employes, refused to consent, and desired that the matter be left to a National Labor Relations Board election. Thereupon Amalgamated petitioned N. L. R. B. for an election, and on May 2nd an agent of N. L. R. B. met with the employers and representatives of Amalgamated, and determined that an election be held at the plant on May 17th.

In the meantime a number of the employes led by one Samuel Lamonica decided to organize an association subsequently named Scranton Sportswear Welfare Association, hereinafter referred to as Welfare. Lamonica is described by the Amalgamated organizers as a foreman and by himself and other witnesses for the charter as an assistant cutter without any official or supervisory authority. Lamonica and some other employes went to one of the partners, expressed their intention, and asked for advice as to employment of counsel to incorporate Welfare. The employers suggested the names of several lawyers who had performed legal services for the firm, and the committee selected Jerome E. Parker, Esq., one of the lawyers named.

About the same time the employers called a meeting of the employes to allow them to discuss the matter. The Amalgamated organizers insist that at the meeting the employers made derogatory remarks as to the efforts of Amalgamated and the effect of union affiliation on the future of the business; but no witness present would confirm this assertion, and both the employers and other witnesses stated that the employers told the employes they were free to join or not to join the union, the Welfare association, or anything else they wanted. Lamonica explained the proposed association and the legal steps to be taken.

A few days later another meeting was held at which the proposed articles of incorporation were read and a number of employes signed as incorporators. Three of the signers were designated as the initial directors, and the same three were named in the acknowledgment as the subscribers who acknowledged the instrument before a notary public. In fact they never appeared before the notary but the acknowledgment was noted, nevertheless.

The proposed articles were filed in this court on April 30, 1946, and duly advertised for presentation for approval on May 8, 1946.

At the conference on May 2nd with the N. L. R. B. agent the question arose as to whether the welfare association desired to be represented on the ballot to determine the sole bargaining agent. Mr. Parker, who was present, stated that the association did not want to appear on the ballot. The proponents of the charter insist that Mr. Parker represented only Welfare, while Amalgamated insists that at the same time he represented the employers.

Objections to the articles of incorporation were filed by Frank D. Vrataric a field representative of C. I. O. and one of the organizers attempting to place the union in Scranton Sportswear.

The election of May 17th resulted in a defeat for Amalgamated, 95 employes voting no union and 21 voting for representation by Amalgamated.

On May 22nd Amalgamated filed objections to the election with N. L. R. B., alleging that the election was held in an atmosphere of threats and coercion, and particularly that the organization and incorporation of Welfare was a device by the owners to prevent and defeat the establishment of the union by Amalgamated and hence was an unfair labor practice. These objections are still pending before N. L. R. B. and no decision thereon has been rendered.

A hearing on the objections to the articles of incorporation of Welfare was held by this court on May 24, 1946.

The objections to the articles set forth that at the time of their filing N. L. R. B. had assumed jurisdiction of the determination of collective bargaining representation for the employes of Scranton Sportswear; that the proposed welfare association is a company-dominated or dummy union formed for the purpose of confusing the employes in their voting in the N. L. R. B. election; and that the purposes set forth in Paragraph 3-B, when made by a company union, constitute an unfair labor practice; and that to sanction incorporation in such case would violate the Nonprofit Corporation Law of May 5, 1933, P. L. 289, sec. 202(c), as amended by the Act of May 24, 1945, P. L. 957, 15 PS §2851-202.

The articles are in proper form and within the provisions of the Nonprofit Corporation Law, and the purposes as stated therein are lawful and not injurious to the community; and if it were not for the dispute about the application of an apparently lawful purpose, we would have no hesitation in approving the articles.

Most of the stated purposes are the usual innocuous ones common to such associations; but the following

statement of purpose is important (paragraph 3-B, Articles of Incorporation) :

"To maintain proper working conditions for the members of the association with respect to hours of employment, wages, health and safety."

This statement clearly makes the proposed corporation a labor organization within the meaning of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, sec. 3, as amended by the Act of May 27, 1943, P. L. 741, 43 PS §211.3; and the National Labor Relations Act (Act of July 5, 1935, 49 Stat. at L. 452, sec. 8, 29 U.S.C. 158). For an employer to dominate or interfere with the formation or administration of any labor organization is an unfair labor practice: Pennsylvania Labor Relations Act, supra, sec. 6, and National Labor Relations Act, supra, sec. 8; and clearly contrary to the policy of the law both of Pennsylvania and of the Federal Government.

But the machinery for controlling and preventing such practices, and the initial forum for determining their existence, is in the respective labor relations boards. In this case the National Labor Relations Board has assumed jurisdiction, and the fact as to whether this proposed welfare association is or is not a company-dominated union and through it the employers have unlawfully interfered with an election or the formation of a legitimate union, will be litigated before that board. If it is determined that Welfare is in fact a company-dominated union, no doubt it will be ordered dissolved or to cease and desist its activities, thus defeating one of the purposes expressed in paragraph 3-B.

This court would be on very dubious ground if it appeared to give legal sanction to an association when the bona fides of its purpose of existence is challenged at the very beginning of that existence before an agency of government having primary jurisdiction of the sub-

ject matter. To decree incorporation now on the apparently innocent statement of purpose, in the face of a serious dispute to be determined in another forum as to the actuality of that purpose, might in effect impose a legal limitation on the law as to unfair labor practices, a thing which is forbidden by the Nonprofit Corporation Law itself, that "Nothing in this Act shall abrogate or limit the law as to unfair competition or unfair practices. . . ." Nonprofit Corporation Law of Pennsylvania, sec. 202(c), supra.

The failure of the three subscribers to make personal acknowledgment before the notary public, while it could easily vitiate the application, could be cured by a new acknowledgment during the course of these proceedings, and should be done if the application is to be prosecuted to finality.

But as the situation stands, this court will suspend consideration of the application, pending final determination by the National Labor Relations Board of the objections to the election of May 17th and the question as to whether the creation of Welfare was an unfair labor practice. If the association is determined to be in fact a company-dominated labor organization, the charter will be refused. If not, on presentation to this court of the final decree of the N. L. R. B. or of any higher tribunal on appeal, on motion the application will be reconsidered.

The same action was taken by the Court of Common Pleas of Allegheny County in In re Application for Incorporation of Independent Association of Employees of Duquesne Light Company, to October term, 1937, no. 2586, Common Pleas of Allegheny County; and we think that action proper here.

### Order

Now, September 5, 1946, consideration of the application of Scranton Sportswear Welfare Association for

incorporation as a nonprofit corporation is further reserved. Upon presentation to this court of properly authenticated copy of proceedings before the National Labor Relations Board and the final decree thereon in In the Matter of Brandes & Portnoff, partners, trading as Scranton Sportswear, and Amalgamated Clothing Workers of America, C. I. O. (case no. 4-R-2095), applicants or objectors may move the court to final disposition of the application.